# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS MOZO RIVERA,<br>    Plaintiff<br><br>v.<br><br>BOROUGH OF WEST YORK, et al.,<br>    Defendants | :<br>:<br>:   No. 1:13-cv-00195<br>:<br>:   (Chief Judge Kane)<br>:<br>: |

## MEMORANDUM

Presently pending before the Court is Defendants' motion for partial dismissal or, in the alternative, for partial summary judgment. (Doc. No. 10.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

## I. BACKGROUND

On January 29, 2011, two police officers employed by the West York Borough Police Department,[1] approached Plaintiff Carlos Mozo Rivera, who was standing in the parking lot of the Overbrook Café in West York Borough, Pennsylvania. (Doc. No. 1 ¶¶ 9-10.) Plaintiff alleges that, although he was not committing a crime or acting suspiciously, Defendants ordered him "to get down on the ground." (Id. ¶ 11.) Plaintiff complied with the order but held his chest off the ground to avoid getting wet and muddy. (Id. ¶ 12.) Defendants then screamed at Plaintiff "to get the hell down" and proceeded to handcuff him, strike him with their fists and a flashlight, and "slam[] him off the hood of the motor vehicle." (Id. ¶¶ 13-16.) After placing Plaintiff in

---

[1] In his complaint, Plaintiff identifies these officers as "Defendant Officers Snyder and Mussleman and/or Defendant Officers John Doe 1 and 2." (Doc. No. 1 ¶ 10.) For the sake of simplicity, the Court will refer to these individuals as "Defendant officers."

1

their police vehicle and observing that he was injured, Defendants drove him to the York Hospital, where he was treated for a contusion to his right eye, abrasions on his lip, and "blood from his nose as well as a bilateral nasal fracture." (Id. ¶ 18.)

Defendant officers issued citations to Plaintiff for public drunkenness and disorderly conduct, and Plaintiff pled guilty to these charges in state court before Magisterial District Judge Walter R. Groom on January 30, 2011. (Doc. No. 10-3 at 2-3; Doc. No. 10-4 at 2-6.) Plaintiff initiated this action by filing a complaint on January 25, 2013. (Doc. No. 1.)

## II. STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper when the defendants are entitled to judgment as a matter of law. See Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990). To avoid dismissal, the complaint must contain allegations sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Essentially, a plaintiff must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

2

When considering a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Public records include "criminal case dispositions such as convictions or mistrials." Id. at 1197. Therefore, the Court may consider the guilty plea Plaintiff entered in a proceeding before Magisterial District Judge Groom and the criminal docket sheets regarding this conviction, which are attached as exhibits to Defendants' motion to dismiss, without converting the motion to dismiss to a motion for summary judgment because the exhibits contain public records concerning Plaintiff, and Plaintiff is on notice of their contents. Id. at 1196-97; Gonzalez v. Allentown Police Dept., No. 11-cv-4809, 2012 WL 3194078, at *1 (E.D. Pa. Aug. 6, 2012).

## III. DISCUSSION

In his complaint, Plaintiff raises claims under the Fourth Amendment to the United States Constitution and claims of assault, battery, and intentional infliction of emotional distress under Pennsylvania law against Defendant officers. Plaintiff also raises a claim of municipal liability against the Borough of West York. In the instant motion, Defendant officers contend that the doctrine of collateral estoppel precludes Plaintiff from raising the state-law claims against them and that, in the alternative, they are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act on his claim of intentional infliction of emotional distress. Furthermore, the Borough of West York contends that Plaintiff has failed to allege facts to sufficiently support a claim of municipal liability. The Court will address each claim in turn.

### A. State-Law Claims

Plaintiff raises state-law claims of assault, battery, and intentional infliction of emotional

distress against Defendant officers. Because Plaintiff pled guilty to the summary offenses of public drunkenness and similar misconduct, in violation of 18 Pa. C.S. § 5505, and disorderly conduct, in violation of 18 Pa C.S. § 5503, Defendant officers argue that the doctrine of collateral estoppel bars him from raising these claims.[2] (Doc. No. 10-4 at 3-6.)

Collateral estoppel, which precludes parties from litigating an issue resolved in a prior judicial proceeding, "serves the twin purposes of protecting litigants from assuming the burden of re-litigating the same issue with the same party, and promoting judicial economy through preventing needless litigation." McNeil v. Owens-Corning Fiberglas Corp., 680 A.2d 1145, 1148 (Pa. 1996); see also Peloro v. United States, 488 F.3d 163, 174-75 (3d Cir. 2007). As a general rule, collateral estoppel applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 228 F.3d 519, 525 (3d Cir. 2002). After a court has resolved the issue, that court's "determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Id.

Under 28 U.S.C. § 1738, a federal court is required to give state-court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." See Allen v. McCurry, 449 U.S. 90, 106 (1980) (collateral estoppel applicable in Section 1983 suits). A district court must, therefore, "treat a state court judgment with the same respect that it would receive in the courts of the rendering state." Matushita Elec. Indus. Co. Ltd. v. Epstein, 516 U.S. 367, 373 (1996); see also Marrese v. Am. Acad. of

---

[2] Defendant officers do not contend that the doctrine of collateral estoppel precludes Plaintiff from raising claims under the Fourth Amendment.

4

Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  Accordingly, the Court must look to Pennsylvania law with respect to collateral estoppel.

Pennsylvania courts generally follows the Restatement (Second) of Judgments with respect to collateral estoppel.  McGill v. Southwark Realty Co., 828 A.2d 430, 434 (Pa. Cmwlth. 2003); see also Pennsylvania State Univ. v. Cnty. of Centre, 615 A.2d 303, 306-07 (Pa. 1992).  Accordingly, Pennsylvania courts apply the doctrine of collateral estoppel where the following criteria are met:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 51 (Pa. 2005); accord Restatement (Second) of Judgments § 27.

Here, Plaintiff pleaded guilty to public drunkenness and disorderly conduct in state court.  Therefore, he is collaterally estopped from questioning any of the facts supporting these convictions.  M.B. ex rel. T.B. v. City of Phila., 128 F. App'x 217, 225-26 (3d Cir. 2005).  Under Pennsylvania law, an individual is guilty of public drunkenness "if he appears in any public place manifestly under the influence of alcohol or a controlled substance."  18 Pa. C.S. § 5505.  An individual is guilty of disorderly conduct

> if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;

> (2) makes unreasonable noise;
>
> (3) uses obscene language, or makes an obscene gesture; or
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. C.S. § 5503. The two citations issued to Plaintiff by Defendant officers at the time of Plaintiff's arrest state that Plaintiff "did appear in public manifestly under influence of alcohol; drinking out of liquor bottle, unable to stand/walk without support" and that he "and [his] girlfriend [were] performing sexual acts in public . . . and [Plaintiff] became physically combative, resisting arrest." (Doc. No. 10-3 at 2-3.)

Although Defendants have submitted the docket sheets from Plaintiff's state-court proceeding as exhibits in support of their motion, they have not submitted the record from Plaintiff's plea hearing. The Court, therefore, cannot speculate about the factual basis submitted in support of Plaintiff's plea or any factual findings made by Magisterial District Judge Groom. Moreover, Plaintiff alleges that Defendant officers struck him after they had placed him in handcuffs. (Doc. No. 1 ¶¶ 14-16.) Because Plaintiff's claims of assault, battery, and intentional infliction of emotional distress appear to be based on the unreasonableness of Defendant officers' conduct after Plaintiff had been subdued, the Court finds that these claims do not challenge the validity of Plaintiff's convictions or the facts underlying them. See Garey v. Borough of Quakertown, No., 2013 WL 3305222, at *7 (E.D. Pa. July 1, 2013) (finding that the doctrine of collateral estoppel did not bar the plaintiff, who was convicted of resisting arrest, from bringing an excessive force claim against the arresting officers because his claim was premised on the officers' conduct following the arrest); Burke v. Twp. of Cheltenham, 742 F. Supp. 2d 660, 670 (E.D. Pa. 2010) (finding that the plaintiff's disorderly conduct conviction did

not preclude him from bringing an excessive force claim against the arresting officers). Accordingly, at this juncture, Plaintiff is not collaterally estopped from raising state-law claims arising out of his arrest for public drunkenness and disorderly conduct.

**B.  Immunity**

Next, Defendant officers contend that they are entitled to immunity on Plaintiff's claim of intentional infliction of emotional distress under the Pennsylvania Political Subdivision Tort Claims Act.  To prevail on a claim of intentional infliction of emotional distress in Pennsylvania, a plaintiff must prove: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1273-74 (3d Cir. 1979).

Under the Tort Claims Act, local agencies are immune from liability "for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541.  Employees of local agencies are generally "immune from liability for acts within the scope of their employment to the same extent as their employing agency."  Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 600 (3d Cir. 1998) (citing 42 Pa. Cons. Stat. § 8545).  An exception to this limitation on liability exists, however, in Section 8550, which provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 . . . shall not apply.

42 Pa. Cons. Stat. § 8550.  Willful misconduct is "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so

that such a desire can be implied." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). "'Willful misconduct,' as used in section 8550, requires evidence that the defendants actually knew that their conduct was illegal" and is "synonymous with the term 'intentional tort.'" Id. at 315; Sameric Corp., 142 F.3d at 600-01. The Tort Claims Act does not apply to Plaintiff's claim of intentional infliction of emotional distress because the allegations concerning Defendant officers' conduct, if proven, would constitute willful misconduct. Sanford, 456 F.3d at 315; see also Pagan v. Ogden, 2010 WL 3058132, at *10 n.10 (E.D. Pa. July 30, 2010) (holding that the Tort Claims Act did not apply to the plaintiff's claim of intentional infliction of emotional distress). Accordingly, at this juncture, the Court cannot conclude that Defendant officers are entitled to immunity on this claim.

### C. Municipal Liability

Finally, the Borough of West York argues that Plaintiff has failed to allege facts sufficient to support a claim of municipal liability. In Monell v. New York City Department of Social Services, the United States Supreme Court held that municipalities are "persons" subject to liability under 42 U.S.C. § 1983. 436 U.S. 658, 690 (1978). That said, a plaintiff cannot state a Section 1983 claim against a municipality based solely on a theory of respondeat superior. Id. at 691-92. Rather, a municipality may only be held liable under Section 1983 if a plaintiff is able to identify "a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom" and "specify what exactly that custom or policy was." McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009). A municipal policy is made when an official with final decision-making authority issues an official proclamation, policy, or edict. Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). Alternatively, a custom or

practice arises when a course of conduct, though not authorized by law, is so permanent and widespread as to virtually constitute law. Id. (quoting Monell, 436 U.S. at 690). A "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker," and a plaintiff is required to "plead knowledge of such directives by a municipal decisionmaker, such as the Mayor or the Police Chief." McTernan, 564 F.3d at 658-59. Once a plaintiff establishes the existence of a municipal policy or custom, he or she must demonstrate that "through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original).

Alternatively, a plaintiff may state a claim of municipal liability by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Berg v. Cnty. of Allegheny, 219. In other words, a failure to train may constitute a municipal "policy or custom" of inaction when it "amount[s] to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick v. Thompson, 131 S. CT. 1350, 1359-60 (2011). The Supreme Court defines deliberate indifference as follows:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

Connick, 131 S. Ct. at 1360 (internal quotations and citations omitted). The Court went on to explain that "[a] pattern of similar constitutional violations by untrained employees is ordinarily

9

necessary to demonstrate deliberate indifference for purposes of failure to train," except for the "narrow range of . . . single-incident liability." Id. at 1361. To succeed on an allegation of "single-incident" liability, "the unconstitutional consequences of failing to train [must] be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations[.]" Id. The Court, however, emphasized the limited scope of single-incident liability in Connick. Id.

Here, Plaintiff alleges that the Borough of West York "has encouraged, tolerated, ratified and has been deliberately indifferent . . . to the need for more or different training, supervision, investigation or discipline" with respect to the following patterns, practices, and customs:

> The use of unreasonable force, excessive force, unreasonable seizure, infliction of emotional distress, and assault and battery by police officers;
>
> The proper exercise of police powers, including but not limited to the unreasonable use of force, the excessive use of force, unreasonable seizure, infliction of emotional distress, assault and battery and violation of citizens' free speech rights, particularly in connection with perceived challenges to police authority;
>
> The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;
>
> The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;
>
> Police officers' use of their status as police officers to employ the use of excessive force, intentional[] infliction of emotional distress, assault and battery, or to achieve ends not reasonably related to their police duties; and
>
> The failure of police officers to follow established policies, procedures, directives and instructions regarding the use of force and arrest powers under such circumstances as presented herein.

(Doc. No. 1 ¶ 25.)

Plaintiff's allegations lack sufficient factual support to make out a claim of municipal liability. First, Plaintiff's references to policies of using unreasonable force, excessive force, unreasonable seizure, infliction of emotional distress, assault, and battery are legal conclusions that do not specify "what exactly [the] custom or policy was." See McTernan, 564 F.3d at 658. Further, Plaintiff fails to allege any facts suggesting that a municipal decisionmaker, such as the police chief of the Borough of West York, had personal knowledge of, or acquiesced in, the alleged unconstitutional conduct. Although Plaintiff argues that he "has pled a course of conduct by the officer defendants, which supports a reasonable inference that their misconduct was the product of a pattern, practice, or custom,"[3] he alleges no facts supporting a finding that Borough policymakers knew of, should have known of, or authorized any unconstitutional conduct when Defendant officers arrested him on January 29, 2011. (Doc. No. 15 at 8.) Moreover, Plaintiff does not allege that the Borough received complaints relating to prior arrests performed by these, or any other, officers. In fact, Plaintiff alleges no other instances where Borough police officers engaged in conduct similar to that which allegedly occurred during his arrest.

Plaintiff's claim of municipal liability also fails to the extent that it is based on a failure-

---

[3] In support, Plaintiff cites Beck v. City of Pittsburgh in which the Third Circuit held that evidence of prior written complaints of excessive force against the defendant police officer who had allegedly injured the plaintiff were sufficient "for a reasonable jury to infer that the Chief of Police of Pittsburgh . . . knew, or should have known, of [the defendant officer's] violent behavior in arresting citizens." 89 F.3d 966, 973 (3d Cir. 1996). Thus, because the officer had allegedly used excessive force on numerous occasions in the past before allegedly using such force against the plaintiff, the Third Circuit found that issues of fact remained as to whether an informal policy of acquiescence existed and whether it had caused the plaintiff's alleged injuries. Here, however, Plaintiff fails to allege any facts supporting a finding that the Borough acquiesced in Defendant officers' alleged conduct.

to-train theory. Nowhere does Plaintiff allege specific facts concerning the Borough's training programs, a pattern of similar constitutional violations committed by Borough police officers, or that the Borough failed to respond to constitutional violations. Thus, Plaintiff fails to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotation marks omitted); see also Halterman v. Tullytown Borough, No. 10-cv-7166, 2011 WL 2411020, at *8 (E.D. Pa. June 14, 2011 (finding that the plaintiff's Monell claim failed because he failed to allege "factual details as to . . . training programs, the history of cognate violations allegedly committed . . . [or] failure to respond to these violations"). The Court also finds no allegation, and no inference to be drawn from any allegation, that specific training was needed or that the absence of specific training was the moving force behind Plaintiff's alleged injuries.

Because Plaintiff's complaint lacks any factual allegations supporting Plaintiff's claim of municipal liability, the Court will dismiss this claim against the Borough of West York. The Court, however, will permit Plaintiff to file an amended complaint to cure the deficiencies.

## IV. CONCLUSION

Upon review of Plaintiff's complaint, Defendants' motion for partial dismiss, and the parties' briefs, the Court finds that Plaintiff is not precluded from raising state-law claims against Defendant officers on collateral estoppel grounds and that Defendant officers are not entitled to immunity on his claim of intentional infliction of emotional distress. The Court, however, finds that Plaintiff has failed to allege sufficient facts to support his claim of municipal liability under Monell against the Borough of West York. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARLOS MOZO RIVERA,** | : |
| **Plaintiff** | : |
| | :   **No. 1:13-cv-00195** |
| v. | : |
| | :   **(Chief Judge Kane)** |

**BOROUGH OF WEST YORK, et al.,** :
    **Defendants** :

# ORDER

**AND NOW**, on this 22nd day of August 2013, **IT IS HEREBY ORDERED THAT** Defendants' motion for partial dismissal or, in the alternative, for partial summary judgment (Doc. No. 10) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion is **GRANTED** to the extent that it seeks to dismiss Plaintiff's claim of municipal liability against Defendant West York Borough, and this claim is **DISMISSED WITHOUT PREJUDICE**;

2. The motion is **DENIED** to the extent it seeks to dismiss Plaintiff's state-law claims against the individual Defendant officers; and

3\*. Plaintiff is granted leave to file an amended complaint within twenty-one days of the date of this order.

                                      S/ Yvette Kane
                                      Yvette Kane, Chief Judge
                                      United States District Court
                                      Middle District of Pennsylvania